Our first case this morning is Ariba v. Emptoris. Mr. Reneau? Help me with your name, Mr. Reneau. Reneau. Okay, I didn't do too badly. No, you did pretty well, sir. May it please the Court, Emptoris is seeking relief from the Court as to the 018 patent. It requests that the Court vacate the jury award, reverse the Court's decision on Jamal, and enter judgment in Emptoris' favor that it didn't infringe the 018 patent. As to the 114 patent, Emptoris is requesting the Dive in. What's the mistake? What's the mistake on the 018 as to infringement? You take your pick. You've got two here. Okay. Yeah, as to the 018, the claim construction requires that they look at the ordinary and customary meaning within the patent specification. And it has to be grounded in the specification. Well, I'm sorry, they look to the ordinary. Are you dealing with individual bid sealing? Is that what you're going to focus on? Yes, it is. So on the 018, well, I'm sorry, on the 018 it's clear that the individual bid sealing is, in fact, is not subject to a limit. I'm sorry, are you appealing claim construction or are you appealing whether or not there's substantial evidence for the jury's determination that the product had an individual bid sealing? We're appealing that there's, we're saying there's not substantial evidence before the jury. There's not substantial evidence to support the jury's findings. Okay, so this is not really an appeal of the claim term in the way that the district court construed it. You think even under that construction there is inadequate evidence to support the jury verdict. That's correct, Your Honor. Okay. But there's a bid sealing and a minimum bid change set in advance. In combination, why don't those two things impose a sealing? Because the bid, there's actually a bid established in advance, which is picked by the buyer. I'm sorry, picked by the seller. Well, it's set by a pre-negotiation, isn't it? With the auctioneer. But it's the communication by the seller in all instances that results in there being a value selected for that bid. In no instance does the buyer ever impose a value for the bid on the seller. There's uncontested testimony on that. So that the seller, are we talking about the, well, as a predicate to that, can you tell me, because the briefs all talk about a preliminary bid and that's not the claim language. Is the preliminary bid different than the bid we're talking about to which the individual bid sealing applies? It's a little bit tricky, Your Honor. The way it works is this. They've accused the preliminary bid feature in combination with the minimum decrement rule or the beach-roam bid rule as being the infringing functionality. So when Ariba says that you have an individual bid sealing, it's the combination of those two things. What we're saying is... But has a preliminary bid already been submitted or is a preliminary bid before submission of what's actually submitted as the first bid? Well, there has to be a method by which to communicate the first bid. The preliminary bid is, in fact, the way to communicate your first bid. And can the auctioneer or whoever is in charge change or modify the bid submitted by the seller? There's no testimony that's ever happened without the seller's agreement. In fact, the preliminary bids can be entered in two fashions. One is it's entered automatically in response to an RFQ and in every instance that is before the jury, that number was picked by the seller. And the second way to get a bid in is to actually have it typed in. There was testimony as part of Dr. Shamos' demonstration and otherwise that the buyer can type in the number. But in every instance, that number has to be the seller's number. It's never supposed to... But the buyer is the one who enters that preliminary bid into the software, right? In some instances, correct, and in others, it depends. And then the seller can't even enter the auction unless the preliminary bid has been input into the software by the buyer in advance. That's correct, Your Honor. But you're saying, what, that the buyer performs a ministerial function and it's the... I mean, the claim uses the word set, that even though that person, the buyer, puts it on the system, it's entirely controlled by the buyer, by the seller? What we're saying is, once the seller has, in an unfettered fashion, selected their number for the bid, which is the preliminary bid, which is in the auction, they have then... The buyer is the one who's going to enter this in the software. Are you telling me that if there was an absolutely unacceptable preliminary bid put forth by a particular seller that the buyer would enter it anyway? I'm saying there's no record evidence that the buyer has ever imposed a bid on the seller. That question Your Honor is asking was not before the jury and there's no evidence put in regard to it. So you're saying... And I've got a problem here, and that is that the jury's made a finding already, and so if there's any evidence that supports their finding, such as the evidence that the buyer enters this into the software, therefore it's a preliminary set bid by the buyer, how do you get around that? Because what we say is that number has been entered as strictly an administrative feature. They're entering the value. But that's a factual finding. And see, we've got to construe the facts to support the jury's verdict unless there's absolutely nothing that supports them. And there does seem to be something supporting their outcome here. Well, I think it's a two-step process. The simple fact that a buyer enters it, I believe, is irrelevant to the analysis. The question is, what is the thing that's been entered? And the claim construction is clear. It's an upper limit. The upper limit, there is no limit imposed by the buyer if the number is picked by the seller. So the fact that there's a button pushed... Well, but the buyer puts it into his software and can't go above it. So how is that not being imposed? I mean, he didn't choose the number, is your concern. Your concern is he didn't choose the number, but he's agreeing to be bound by it. So why is it no less an individual... Because the number was picked by the seller. You can't have... To me, the key is the communication. Well, it's a negotiation before the auction, right? Well, at least in one instance, there was a... There's testimony from... So the buyer and the seller are talking it over. Right, but in that instance, and in every instance that we're aware of, there's never a circumstance where the buyer imposes a number on the seller. But isn't the buyer imposing a number on itself because before entering the auction, it's agreeing that this will be its ceiling? Because if it doesn't make that agreement, it can't actually even enter the auction. So why isn't... Even though someone else artificially created what the number should be, why couldn't the jury have concluded that nonetheless the buyer is acceding to it and thereby accepting it as its own individual bid ceiling? Because it's too late in the progression. Once you have freedom to pick a single bid... We have testimony from the expert for Ariba saying if there's a limit on any bid... Sorry, if there's any bid that's unlimited, that is without a limit, you can't have a bid ceiling. So in this instance, what we're saying is once the seller has picked it, it doesn't matter what the buyer does. The fact that the buyer likes that number and wants to conduct the auction is axiomatic. You can't have an auction without that. That's not... What the patent really talks about is the buyer exercising discretion to pick a number based upon a variety of factors including a price discovery and a whole set of factors. So it's not in the claim? No. The claim says upper limit. The claim says upper limit. And what I'm saying is it's uncontested that the preliminary bid has no limit. The preliminary bid is the first bid. And as a result, they're stuck in a box, which is as follows. Once you have a bid without a limit, which we say is clear from the evidence there is, there's no testimony saying the buyer has ever imposed a limit on the seller. So the question before the court is this. Is it enough for the seller to pick the bid and to never have a number imposed on the seller by the buyer that the seller hasn't already agreed to? Is that enough to say there's an unfettered bid? And our position is it's clear that without the imposition of a number by the buyer, once you have seller free will, they're picking a number without a limit. So adopting your view, then you would have to say that subsequent bids are governed by a bid ceiling. You're just looking at the first bid. Because you think the minimum bid rule, then, the minimum bid rule has some effect on establishing ceilings. You would just ask us to say that doesn't affect the first bid, but all subsequent bids. Yeah, let me handle that in two parts. Yes, as to the fact that the first bid is without limit, and that's enough to say that there's no individual bid ceiling, for two reasons. One, Shamo says there has to be, and he's the expert for Ariba, there has to be a limit on the first bid, or there's not a bid ceiling. So their own expert says that. But the second step is, once you get past the first bid, which is freely picked by the seller, in every instance, all of the bidders are treated the same. The rule, then, is everybody has to beat their last bid. So that is not an individual bid ceiling, because it's a rule applied universally to everybody. It's not an individual rule applied to you as a bidder. So the whole thing falls apart if you have a single bid that is not governed by a ceiling. And I don't believe that's going to be challenged by anybody. The question really is, do we have such a bid? And as the Court has questioned, can you say that first bid, the preliminary bid, which was picked by the seller without ever having the number be opposed by the buyer against the seller's will, the seller communicates it first, what happens in that circumstance where that first bid is unfettered? And our position is, how could it possibly be a limit? How could a reasonable jury conclude that a bid that was picked without restriction by a seller is a limit? Well, does it all come down to how we construe the word, then, set? I mean, the other side would probably... You were saying set means determined, and in this case the seller determines it. One could also argue set just means control, that certainly the buyer is the one that controls getting the bid inserted. Yeah, I'm actually not addressing the word set, but I will now. It says setting an individual bid ceiling. So the threshold question is, do you have an individual bid ceiling? If you don't, it doesn't matter what you're setting. So there's certainly data entering an initial bid. There has to be a way to get the first bid in. But the set, I believe, is not a question that needs to even be addressed if you first conclude there's no individual bid ceiling to set. So the threshold issue in our mind is, is there a bid without limit? The answer we say is clearly yes, it's the preliminary bid. Shamos, the expert for ARIVA, conceded that was a bid. It is also conceded that that bid has no limit. There's no factual dispute about that. And so the final question really is, was that preliminary bid, which is the first bid in the auction, picked by the seller without restriction? And all they can offer is a single instance in which there is an entry of data in the sense of the buyer entering the data, and they mischaracterize that as somehow being the buyer picking the number. But when you go back and look at the testimony, there is no challenge to the conclusion, there's no record evidence that the buyer ever imposes a bid on a seller. Without that, you can't have a limit. I'm not sure how much time you wanted to save, but did you want to address 114? Yes, I do. Thank you, Your Honor. You're in your rebuttal time. You're right, Your Honor. Sorry. Just quickly, the bottom line of the 114 patent is that the specification is replete with references to adding the second time interval to the closing time. There is not a single instance of any other embodiment. Now, there was an attempt, frankly, in the original claim construction hearing to add, when they were looking at means of enabling, there was an issue before the court concerning construing a means for enabling the computer to extend the closing time by the second time interval. In that instance, Ariba tried to convince the court that that means language should include more than one embodiment. And they offered as the reason for that. But this claim language doesn't say extending the closing time by the second time interval. It says using the second time interval. So why should we construe it as requiring the entire, every minute of the second time interval come at the termination or the closing time of the first interval? Because if you interpreted it the way it's being proposed by Ariba, it would be divorced from the specification. It could mean nearly anything. And in fact, that's the claim. But the claim doesn't say add the second interval to the end of the first time interval. It just says use it. And why aren't you using it? Because no question, a portion of your second time interval goes beyond the first. It extends the closing time. Well, we offer that you would render element C of both claims 69 and 82 meaningless if you were to construe the language to allow any type of adding. And the trigger time is not mentioned in a single place in the entire specification as being the method by which one would add time. In fact, in every instance of which I believe. Actually, that's not true. The trigger time is often mentioned, I suspect, as the trigger for adding time. Correct, Your Honor. You're just saying it's not mentioned in terms of that's when the extra time starts ticking in. It's never used. And there are over a dozen references to how to use a closing time in combination with a second time interval by adding. In every single instance in which you've extended the overtime, it is adding the second time interval to the closing time. It never mentions, which is a separate invention, taking a trigger time and adding the time to the trigger time. Is this an originally filed claim? Sorry? Is this an originally filed claim? This claim, 69, the claims at issue, which are 16, and the dependent claims, I'm not aware, Your Honor, whether this claim was ever modified. Thank you, Mr. Renaud. Would you like to save your last minute? I would. Thank you, Your Honor. Mr. Haslam? Turning to the 018 patent first, there was substantial evidence in front of the jury to support the jury's conclusion. If you look at the references in the patent to table 10, table 10 is what mTORIS does. In table 10, there is preliminary price discovery, an offline bid, which is one of the dependent claims. So the claims are clearly talking about getting discovery of what a bid might be before the auction from the seller. That's what table 10 says. Table 10, then, has the example of seller A is the one I want to focus on. And this, I think, is in column 23 of the patent. In the auction, seller A's offline bid is the lowest bid. And what the patent says is, sellers B, C, and D go down to what their offline bids were, which were all higher than the seller A. Seller A is forced to bid their offline bid, or they can't participate in the auction. And that is an example. I guess I'm not being clear. You're saying you have a preliminary thing, and the bidder comes in, the seller comes in, and says, this is what I want my first bid to be. The seller is forced to make that offline bid their first bid in the auction. Yeah, but that's not setting this. The fact that they're forced to come in, it seems to me a ministerial thing, like they have to show their cards first in order to know what to put in the computer. The fact that they're forced to comply with theirs, how does that mean that the buyer is determining or setting that level? Because what the patent talks about as an example of a bidder-specific ceiling is that the software is set up such that seller A is not free to decide. I now see what the auction is doing. I see that I could get the bid by bidding more than my bid, but the software doesn't let that seller do that. The software forces seller A in Table 10 to bid what their offline bid was. The software does that. And it takes away the freedom of the seller to be able to bid something higher than what the software has. And in that example, it is an offline bid that the buyer got from all of the potential sellers, which the buyer then decided to implement as the ceiling for each individual seller that they had to come in. Well, how does the first seller then have a ceiling under that scenario? What is the ceiling for the first? You're right. The fifth guy can't make a change based on what he's seen before. What about the first guy? The example is every seller is limited by, in that example, their offline bid. And the example is that each of the sellers gave a different offline bid. And the whole thrust of the invention is, it used to be... So the rules are that whatever you give as your offline bid is what you have to use as your first bid, right? In that example. Right. You interpret that to mean that a ceiling is set? Yes. But the seller is still setting that ceiling. The software is what enforces the claim. Forget who enforces it. Who sets it? Who sets that first number? It's the seller that is setting... The buyer. The buyer sets it because the buyer decides to use... The buyer says you can't change it after you've seen the other numbers. He doesn't say what your number has to be in the first instance. Yes, he does. He just says the rule is you have to consistently comply with that, right? But that's the whole... The invention is, yes, you have a different ceiling than B, C, and D for whatever reason. It can be based on offline discovery. It can be based on pre-auction discovery. Those are the dependent claims. But it doesn't matter where the number comes from. The software imposes a limit that during the auction limits the bids. Table 10 is an example in the patent of the invention, of this particular invention. And the way it works is you can get information and the buyer in the downward auction can then decide that it wants to use that information to make sure that somebody who was willing to do the job at $100 can't later come in and see that everyone else is up at $500 and decide, I want to bid $450. That's the whole purpose of this invention. And you do that by saying, if you're going to tell me before the auction that you'll do this for $100, I'm going to hold you to that, and you can go down, but you can't go up. Just so I understand, is your position that an individual bid ceiling someone will satisfy the claim regardless of who's choosing the number, whether it's the buyer or the seller? As long as once the bid is selected and that bid becomes a ceiling by virtue of the software setting it and then doing the comparison and the rest of the steps, yes. In this case...  whether it was the buyer or the seller? In the sense of where the number comes from, it doesn't matter. What does matter is that once it is determined by whoever is running the auction and whoever has control of the medium, which is what this patent is about, a software patent, whoever has control of that decides that that number is going to be the one that I'm going to hold you to because that's going to be your individual bid ceiling, and then, as the rest of the claim says, I'm then going to make sure that no bids in a downward auction go over that one. If the information that is entered is this preliminary bid comes from the seller, how is that the buyer setting a ceiling? Because the buyer doesn't have to choose it. The buyer does not have to input it. The buyer does not have to... This is something that could or could not be used by the buyer. The buyer may decide, I'm not going to have any pre-discovery. I'm not going to do an RFP or an RFQ. I may not know what it is. But is your answer because Claim 16 says the processor sets an individual bid ceiling and doesn't say the buyer sets it? It doesn't say the buyer. It says the processor says it. So the number can come from... I can make up the number as the buyer. You can tell me. I'll do it to you for $100. I can decide that's great. I can decide that. I'm going to give you a break and say it's $105. Once it goes into the system, the system imposes that and says that it's a different one for all of you and I'm going to hold you to it. So taking this out of the realm of software, if I conduct an auction and my rule in the auction is the night before the auction starts and you do your first bid, you have to put your bid in a sealed envelope and you can't change it. You've got to live with that as your first bid. That's in essence what you're saying is an individual bid ceiling. That the seller is required to abide by the bid he submits in the first instance. The seller in a downward auction, a buyer in an upward auction, cannot exceed or go below, depending on the auction, we'll take a downward auction, cannot exceed the... What he submitted in the first instance. What the auction has decided I'm going to hold you to and it happens to be in your existing bid. But it hasn't decided the number. All it's decided is it's going to hold them to what he submitted in the first instance. It hasn't had any effect on the determination of what that number is. It's just a rule that you're going to have to live with whatever number you set. And you think that's insufficient to say that the system is therefore setting a ceiling. Right, because it is holding you... In the facts of this case, the buyer is the one who makes the decision to implement the bid ceilings and the buyer is the one who makes the decision to take the preliminary bid, which is not a bid in the auction, and that's where the semantic issue came up at trial, and decides to make that the initial bid and it becomes the initial bid only because in the facts of this case, the seller has to accept that bid as its preliminary bid or it cannot participate in the auction. If the buyer found that bid unsuitable for some reason, would the buyer have the option to simply not enter it? Yes. How is that? He just doesn't enter it. If you look at the screenshots, you can just say, I'm going to have an auction. I want to buy 100 computers. And you can bid whatever you want. There's an option that says, I'm going to make you bid no more than $100 and I'm going to make you bid no more than $75 and I'm going to make you bid no more than $200. That's an option the buyer has in the software. If I can just say one more... Is there any evidence in the record that the allegedly infringing software ever imposes or allows for that limit? Is there any evidence in the record that that ever happened? That a buyer ever stopped or rejected a bid by a seller because of the amount? Has that ever happened? Is there any evidence in the record about that? There's no evidence in the record that a buyer who decided to implement bid ceilings did so without some consultation with the seller, but there is evidence that you don't have to use bid ceilings. Maybe my question doesn't make sense, but my question was a little different than that. Is there any evidence that the accused infringing software, using the buyer, precluded or rejected or didn't accept a particular bid by a seller? I don't think there's any evidence on that question, one way or the other. Is there another piece of evidence that the jury had before it that would support it? In RFP to Shell, when Shell was looking at buying auction software, Shell specifically said in its request, we want bidder-specific start prices. And this is what MTOR has told Shell its software did. We have buyer-specific ceiling prices against which the individual's bid data is validated. That's at Appendix 3856, transcript site 1164.1. So they went out and told their customers that their software had bidder-individual-specific ceilings, which is what Table 10 in the patent says. Their software does what Table 10 in the patent says. And as far as on the 114, there are claims, and there were originally five claims that talked about extending by an incremental amount of time. There are claims in the patent that specifically talk about adding the second time interval to the closing time. I think the court did not modify its claim construction on the summary judgment ruling. It basically said the second time interval happens to be an interval of time used in the overtime. And the court, when it said the specifics of it depend on the claim context, was referring effectively to the fact that different claims talk about how you use the second time interval in different ways. And as the court's already said, some of the claims say using it by which you extend. Others say using. Others say that specifically you add the second time interval to the scheduled closing time. So I think there's adequate evidence in the record to show that the claim construction is correct on the second time interval. That's the only one they're contesting. And that the application of it is... that the jury found is adequate. An interesting thing is, is that what Mtorris is arguing here is something they specifically told the district court on summary judgment they were not arguing. When they were below, this is at the appendix 2878, on summary judgment they told the court, Mtorris does not rely on an embodiment of adding extra period of time to the closing time as the only way to practice the patent. And of course their appeal here is that that is the only way to practice the patent. The claim should be limited to that particular embodiment. They did not address validity. I want to just make a few comments on validity. For the most part, their arguments made to this court are not properly before the court. This case was specifically tried to the jury on specific combinations of prior art. The judge was very clear from the pretrial conference to the charge conference that he was going to require Mtorris to delineate for the jury those specific combinations that they were going to rely on. And the jury instructions carried that forward. And I think most critically, the jury instruction, after delineating the combinations that the jury was to consider, when it came to the Grand Deer factor of the scope and content of the prior art, this is what the instructions said, and this is in the appendix of 3239, on page 17 of the jury instructions. Determining the scope and content of the prior art means that you should determine what is disclosed by each combination of references you have found to be prior art. And that follows the judge telling them, Mtorris contends that these claims would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of one or more of the following combinations of references. And then he set out specifically the combinations of references that the jury was to consider. And so what we have in the opening brief is almost a total failure, for example, in the 018 to make any showing that all the claim elements of the 018 claims are shown in the prior art. The reference that was before the jury was Brett and McAfee. There's only one reference to Brett in the opening brief. And that is simply saying that Brett was one of the combinations. When you go to the guts of their brief, the arguments are all in prior art that was not properly before the jury, was not the subject of Jamal motions, and therefore is not properly before the court. I see my time is up. Thank you, Mr. Haslam. Mr. Reneau, you have about a minute remaining. The Shell testimony that was referred to on A3856 does not refer to an individual bid ceiling. It's referring to a bidder-specific start price. I don't believe that it supports the contention offered by Mr. Haslam. In addition, a rebuttal lies on Table 10 in the spec to support his position on infringement in the 018 patent. That table refers to a pre-bid. A pre-bid is not a preliminary bid. It isn't even a bid in the auction. Further, Shamos, their expert on A4074 through A4075 says a pre-bid is a prior art. A pre-bid requires that you re-bid later to enter the auction, so it's demonstrably different than what's being accused here. A bidder-specific start price is not the same as a limit. There's no evidence on the record that there's ever been a limit imposed by a buyer on a seller, and therefore they have to fail on the 018 infringement. Thank you. Thank you, Mr. Reneau.